UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>SCOTT S. MAIFELD,<br><br>　　　　　　　　　　Debtor<br><br>SCOTT S. MAIFELD,<br><br>　　　　　　　　　　Plaintiff<br><br>v.<br><br>WEST COAST LIFE INSURANCE CO.,<br><br>　　　　　　　　　　Defendant | Chapter 13<br>Case No. 11-17986-FJB<br><br><br><br><br><br>Adversary Proceeding<br>No. 12-1311 |

**AMENDED MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS**

By Count I of his complaint in this adversary proceeding, the plaintiff and chapter 13 debtor, Scott S. Maifeld ("Maifeld"), seeks damages under Massachusetts law for denial by defendant West Coast Life Insurance Company ("West Coast") of his claim as a beneficiary under his deceased mother's life insurance policy. West Coast denied coverage on the basis that the mother's policy had lapsed before she passed away. Maifeld, arguing that the policy remained in effect, contends that the denial was an unfair claim settlement practice within the meaning of MASS. GEN. LAWS ch. 176D, § 3(9) (defining certain acts as unfair claim settlement practices), made actionable through MASS. GEN. LAWS ch. 93A, § 9.[1] The adversary proceeding is before the court on West Coast's motion under Fed. R. Civ. P. 12(b)(6) to dismiss this count for failure to state a claim on which relief can be granted. For the reasons set forth below, the court will grant the motion.

---

[1] The complaint also contains a second count, for violation of the automatic stay, which by separate order the court has already dismissed.

By separate order, the court earlier ruled that Count I is related to the Maifeld's bankruptcy case but does not arise under the Bankruptcy Code and is not a core proceeding within the meaning of 28 U.S.C. § 157(b). It is therefore subject to 28 U.S.C. § 157(c), under which the bankruptcy court may enter final judgment in the matter only with the consent of both parties. Maifeld so assented in his complaint; and in a later pleading, West Coast has now done the same with respect to Count I. Accordingly, the court now proceeds to decide the matter pursuant to its authority under § 157(c)(2).

a. **Standard of Review**

When presented with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Artuso v. Vertex Pharmaceuticals, Inc.*, 637 F.3d 1, 5 (1st Cir. 2011). Subject to certain exceptions, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*, citing Fed. R. Civ. P. 8(a)(2).

> Although there is no need for "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ⎯ U.S. ⎯, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). Accordingly, a complaint must include more than a rote recital of the elements of a cause of action; it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Tambone*, 597 F.3d at 442 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

*Artuso*, 637 F.3d at 5.

b. **Arguments of the Parties**

Massachusetts law defines certain acts and omissions as "unfair claim settlement practices." Mass. Gen. Laws ch. 176D, § 3(9). These include "failing to effectuate prompt, fair and equitable

settlements of claims in which liability has become reasonably clear," *id.* at § 3(9)(f), and "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds," *id.* at §3(9)(g). Section 9(1) of MASS. GEN. LAWS ch. 93A empowers any person whose rights are affected by another person violating the provisions of ch. 176D, § 3(9) to bring suit for redress. MASS. GEN. LAWS ch. 93A, § 9(1); *Polaroid Corp. v. Travelers Indem. Co.*, 414 Mass. 747, 754 (1993). Maifeld contends that his complaint alleges an unfair claim settlement practice within the meaning of paragraphs (f) and (g) of ch. 176D, § 3(9). In support of dismissal, West Coast argues (among other things) that there can have been no violation of paragraph (f) or (g) of ch. 176D, § 3(9) because both require that the denied claim have been a valid claim, but, on the alleged facts, the policy had expired before the insured passed away, and therefore Maifeld's claim was invalid. Maifeld concedes that, in order to state a claim for either of the unfair claim settlement practices on which Count I is predicated, he must allege facts that, if proven, would support a determination that the denied claim for coverage was a valid one; but, for five reasons, he denies that the alleged facts would not support that conclusion. First, he argues that, because the policy had not expired when he filed his bankruptcy petition, and he was both his mother's guardian—in which capacity he was in charge of paying her bills—and the beneficiary of the policy, the automatic stay has prevented cancellation of the policy; consequently, the policy remains in effect, and the denial of his claim was wrongful. Second, he also argues that 11 U.S.C. § 108(b) tolled the contractual grace period, and therefore "he was well within any deadlines or grace periods"; he does not specify what (if anything) he did within any deadline or grace period. Third, he also argues that the policy cannot have expired before his mother's death because MASS. GEN. LAWS ch. 175, § 110B prohibits life insurance policies from lapsing for nonpayment of premiums until the expiration of three months from the premium's due date. Fourth, he argues that there can have been no lapse because the policy expressly provides for a continuing right of reinstatement. And fifth, he argues that it is possible, though he

3

cannot presently so allege, that the insured purchased an option under which any premium not paid before the end of the grace period would be paid by an automatic policy loan.

**c.      Facts**

The facts are taken from the complaint, as supplemented by the insurance policy on which the complaint is predicated and by three notices to which the complaint makes reference.  West Coast attached copies of the policy and notices to its motion to dismiss, and Maifeld indicated that he had no objection to consideration of these documents in conjunction with the motion to dismiss.  The Court may consider these documents without transforming the Rule 12(b)(6) motion into a motion for summary judgment.  See *Nyepon v. Human Resources Development Institute, Inc.*, Civ. No. 12-10304, 2012 WL 685876, at *1 n.2 (D. Mass. March 1, 2012) (citing *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)); *Fudge v. Penthouse Intern., Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988).

Maifeld filed a petition for relief under chapter 13 of the Bankruptcy Code on August 23, 2011.  At that time, his mother, Gloria Vant, was alive and living in a nursing home.  Due to Vant's physical and mental health, Maifeld had been appointed her guardian.  Also at the time, Vant was the owner of, and the insured under, a life insurance policy issued by West Coast (the "Policy"), of which Maifeld was a beneficiary.

The Policy indicates that it is a contract between the policy owner and West Coast and specifies that "[t]he policy owner has all rights under the policy during the lifetime of the insured."  In the Policy, West Coast promises:  "We will, subject to the terms of this policy, pay the death benefit to the beneficiary when we receive proof that the insured died while this policy was in force."  The Policy specifies that premiums are due in advance "and must be paid when due to avoid loss of coverage or reduction of benefits."  In a section entitled Grace Period, the Policy states:

> If any premium after the first one is not paid when due, a grace period
> of 31 days will be allowed for payment. The policy will continue in force
> during this period. If the insured dies during the grace period, the

4

>premium required to pay for coverage to the end of the policy month of death will be deducted from the death benefit.

In another section entitled Default, the Policy states: "If premium payments are not paid when due or within the grace period, this policy and any attached riders will lapse as of the due date of the unpaid premium and the nonforfeiture option will apply."

Vant died on September 10, 2011. Maifield, as beneficiary, made a claim on the Policy. On December 6, 2011, West Coast denied the claim for the stated reason that a premium payment had not been made, as a consequence of which the policy had lapsed before the insured's death.[2]

There is no dispute that a premium payment had in fact come due and that neither Vant nor anyone on her behalf had made the payment. On July 18, 2011, West Coast sent to Vant a first notice that a quarterly premium payment in the amount of $4,423.38 was due on August 7, 2011. It stated: "To ensure that your policy stays in full force and does not lapse, your payment should be received by 09/07/11." On August 29, 2011, West Coast sent Vant a second notice of payment due. It said: "We have not received your payment for the 08/07/2011 premium. To make sure you have continuous coverage, we must receive your payment by 09/07/2011. If we do not receive your premium by then, your policy will lapse, subject to the non-forfeiture or automatic premium loan options, if any." West Coast sent a third notice on September 16, 2011, stating:

>Your grace period has expired. Continuation of your insurance coverage is subject to the nonforfeiture or automatic premium loan options, if any.
>    If your policy has lapsed, you may reinstate without having to provide evidence of insurability if we receive your payment by 10/08/2011, during the insured's lifetime.

By this time, however, Vant had passed away. With one caveat, Maifeld concedes that the premium that was due on August 7, 2011 was not paid by 10/08/2011 and has never been paid.

---

[2] The complaint alleges that the policy "was canceled," which might be construed as an allegation that the policy terminated because of an affirmative act or election on the part of West Coast. This is misleading. West Coast's position has always been that the policy lapsed by its own terms, and I do not understand Maifield to contend that West Coast terminated the policy by its own act or election.

5

The caveat concerns a provision in the Policy entitled Automatic Loan for Premium. It states:

> When this option is in effect, any premium not paid before the end of the grace period will be paid by an automatic policy loan. The policy loan will be taken at the end of the grace period. The policy loan will not be taken if the unpaid premium plus loan interest exceeds the net cash value. In this case, the policy will be in default and the nonforfeiture provision will apply.
> This provision may be chosen in the application or by written request before the end of the grace period for an unpaid premium. This provision may be canceled by the policy owner by written request.

The complaint is silent as to whether, at the time of Vant's death, this option was in effect and a policy loan could and should have been taken to pay the premium in question. At the hearing on the present motion, Maifeld stated that he did not know whether this option was in effect and was or should have been used to pay the premium.

**d.    Discussion**

Maifeld's claim as a beneficiary is a claim under the Policy, and therefore I begin with the Policy itself. In it, West Coast's central promise to pay a death benefit is made expressly contingent on the insured's dying "while this policy was in force." The Policy requires that premiums be paid when due, affords the policy owner a 31-day grace period, and states that "[i]f premium payments are not paid when due or within the grace period, this policy and any attached riders will lapse as of the due date of the unpaid premium." The grace period undisputedly ended without payment on September 7, 2011. Therefore, when Vant died on September 10, 2011, the Policy had already lapsed. Maifeld makes a series of arguments why the Court should nonetheless reach a different conclusion.

**i.    Mass. Gen. Laws ch. 175, § 110B**

He first argues that the policy cannot have expired before his mother's death because Mass. Gen. Laws ch. 175, § 110B prohibits a life insurance policy from lapsing for nonpayment of a premium until the expiration of three months from the premium's due date. Maifeld articulated this argument

for the first time only at the hearing on this motion and without elaboration or attempt to show how it applied.  In relevant part, § 110B states:

> No policy of insurance referred to in section one hundred and eight and no policy of individual life insurance issued or delivered in the commonwealth, except a policy which by its terms is cancellable by the company or is renewable or continuable with its consent, or except a policy the premiums for which are payable monthly or at shorter intervals, shall terminate or lapse for nonpayment of any premium until the expiration of three months from the due date of such premium, unless the company within not less than ten nor more than forty-five days prior to said due date, shall have mailed, postage prepaid, duly addressed to the insured at his last address shown by the company's records, or in case any other person shall have been designated to receive premium notices and written designation of the name and address of such person has been given to the company, then to that person, a notice showing the amount of such premium and its due date. Such notice shall also contain a statement as to the lapse of the policy if no payment is made as provided in the policy. If such a notice is not so sent, the premium in default may be paid at any time within said period of three months.

MASS. GEN. LAWS ch. 175, § 110B.  Even if the Policy is one to which § 110B applies, it cannot help Maifeld here.  By its "unless" clause, § 110B permits a covered policy to lapse in fewer than ninety days if certain notice is afforded the insured.  On the pleaded facts, that notice was given.  On July 18, 2011, which is not less than ten nor more than forty-five days prior to the August 7, 2011 due date, West Coast sent Vant a notice showing the amount of the premium and its due date and containing a statement as to the lapse of the Policy if no payment is made as provided in the Policy.  Section 110B is therefore of no avail.

  **ii.  Reinstatement**

Maifeld argues that, when Vant died, the policy cannot have already lapsed because, as evidenced by West Coast's third notice to Vant, issued after her death, she still at that time enjoyed a right to reinstate the Policy.  This argument is based on a misunderstanding of reinstatement.  By definition, it applies only to a policy that has already lapsed.  Had the policy not lapsed, reinstatement

7

would be unnecessary.  In any event, as the third notice made clear, West Coast's offer of reinstatement was available only during the insured's lifetime, but Vant had by then passed away.  Nor would reinstatement have been retroactive.

### iii.    11 U.S.C. § 108(b)

Third, Maifeld argues that, by virtue of his bankruptcy filing, 11 U.S.C. § 108(b) tolled the Policy's grace period, and therefore "he was well within any deadlines or grace periods." He does not specify what (if anything) he did within any deadline or grace period.   Section 108(b) states:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of--
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b).  This subsection has no application here because the right in question—to make a payment or cure a payment default—was at all relevant times Vant's right as owner of the policy.  Vant's rights expired three days *before* her death, when the grace period ended without the payment having been made.  The policy made clear:  "The policy owner has all rights under the policy during the lifetime of the insured."  The rights never became Maifeld's.  Section § 108(b) extends only certain periods within which "the debtor or an individual protected under section 1201 or 1301" of the Bankruptcy Code may do certain acts.  Vant is not the debtor in this case; and Maifeld does not contend that she is an individual protected by § 1201 or § 1301.

Maifeld argues—or at least suggests, as the argument is not at all developed—that because he was Vant's guardian, he was responsible for payment of her debts, such that Vant's obligation to pay the

8

premium was also his obligation, and therefore § 108(b) applies. This is a misstatement of Massachusetts law. "[A] guardian is not personally liable for the incapacitated person's expenses and is not liable to third persons by reason of that relationship for act of the incapacitated person." MASS. GEN. LAWS CH. 190B, § 5-309(a). The guardianship did not make Vant's obligations into Maifeld's.

### iv. The Automatic Stay

Fourth, Maifield argues that, because the policy had not expired when he filed his bankruptcy petition, and he was both his mother's guardian—in which capacity he was in charge of paying her bills—and the beneficiary of the Policy, the automatic stay, 11 U.S.C. § 362(a), prevented cancellation of the Policy; consequently, he would have the Court conclude, the Policy remained in effect, and the denial of his claim was wrongful. This argument fails for several reasons. As I have already ruled, Maifeld's status as guardian did not make him personally liable for her debts. Nor, as beneficiary, did he ever have rights or obligations under the Policy. The Policy specified, "[t]he policy owner has all rights under the policy during the lifetime of the insured." All rights under the Policy remained Vant's alone through the date on which it lapsed. Therefore, even if West Coast did act to terminate the policy—Maifeld alleges no act and specifies no subsection of § 362(a) that might have been violated—it would have been an act against Vant, not against Maifeld, and therefore not one enjoined by the automatic stay in Maifeld's bankruptcy case. Vant is not a debtor in that case. Nor was the Policy an asset of his estate.

There is a more fundamental problem with this argument: West Coast did not *act* to terminate the policy. The policy lapsed on its own terms, by virtue of nonpayment of the premium. The automatic stay enjoins various acts, but Maifeld cites no part of the stay that enjoins the lapsing of a contract by its own terms.

9

  v.  **Automatic Policy Loan**

  Last, Maifeld argues that it is possible, though he cannot presently so allege, that the insured elected an option under which any premium not paid before the end of the grace period would be paid by an automatic policy loan; if that is the case, then the Policy did not lapse before Vant's death, and denial of his claim was wrongful. West Coast responds that Vant had not elected this option, to which Maifeld responds that whether she elected this option or not is a question of fact and evidence whose disposition is not appropriate by a Rule 12(b)(6) motion.

  This argument is based on the Policy's "Automatic Loan for Premium" option. When this option is in effect, any premium not paid before the end of the grace period will be paid by an automatic policy loan, provided the unpaid premium plus loan interest does not exceed the net cash value. If this option was in effect, and if the unpaid premium plus loan interest did not exceed the net cash value of the Policy, then payment should have been automatic. The Court agrees that a Rule 12(b)(6) motion to dismiss does not permit the Court to engage in fact finding or otherwise test the evidence. The purpose of a motion to dismiss is to test the sufficiency of the allegations.

  This does not end the matter, because the allegations themselves are deficient. The complaint does not allege that Vant had elected the Automatic Loan for Premium option. Nor, because he does not know, can Maifeld presently allege that she elected the option or that, if elected, the Policy had sufficient net cash value to enable payment of the premium by this means. In other words, he has not alleged and cannot presently allege what he must allege to state a claim on which relief can be granted and avert dismissal.

  The Court will dismiss the complaint. A complaint is evaluated by the allegations it contains, not by those it might later contain. As it stands, this complaint fails to state a claim on which relief can be granted. Maifeld cannot allege that the payment was made, by any means, on which his entitlement to

the death benefit depends.  For this reason and those set forth above, Count I must be dismissed.  A separate order will enter dismissing the complaint.

Date:  July 15, 2013                                       _____
                                                         Frank J. Bailey
                                                         United States Bankruptcy Judge